## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| *DANIEL P.-O.,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )  *No. 1:18-cv-00146-JAW* |
| | ) |
| *NANCY A. BERRYHILL,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable, as of December 31, 2012, his date last insured for SSD benefits, of performing work existing in significant numbers in the national economy.[2] The *pro se* plaintiff seeks remand on the bases that the ALJ (i) ignored a number of diagnoses that he claims contributed to his disability, (ii) badgered him at hearing,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] Unlike entitlement to Supplemental Security Income ("SSI") benefits, entitlement to SSD benefits hinges in part on acquisition of insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status."). To be eligible for SSD benefits, a claimant must show that he or she became disabled on or before his or her date last insured for SSD benefits. *See, e.g., Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status."). The commissioner notes that the plaintiff filed an application for SSI benefits in February 2015 that was denied because his countable resources exceeded the limit, and the denial was not appealed. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 20) at 1 n.1.

1

(iii) apparently did not hear or understand some of his testimony and possibly discredited some of it due to a language barrier, (iv) relied on the testimony of a vocational expert ("VE") that was predicated on a flawed recitation of his limitations, (v) both failed to consider the combined effect of his impairments and disregarded his wife's written testimony, (vi) denied his claim solely because of insufficient medical records, and (vii) was confused as to his work history. *See* Itemized Statement of Specific Errors and Objection to Defendant's Prayer for Dismissal ("Statement of Errors") (ECF No. 15-1), attached to Fact Sheet for Social Security Appeals: Plaintiff (ECF No. 15), at [1]-[9]. For the reasons that follow, I conclude that none of these points warrants remand.

I have also considered whether, as the commissioner argues, *see* Opposition at 6-9, the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence despite her rejection of the sole expert opinion of record bearing on his physical impairments, that of agency nonexamining consultant Mary Lanette Rees, M.D., and her assignment of only some weight to the sole expert opinions of record bearing on his mental impairments, those of agency nonexamining consultants Leigh Haskell, Ph.D., and Mary A. Burkhart, Ph.D., *see* Record at 18, 24. I conclude that it is.

I, therefore, recommend that the court affirm the commissioner's decision.

The plaintiff alleged disability beginning on August 1, 2007. *See id.* at 14. Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff's date last insured ("DLI") for SSD benefits was December 31, 2012, Finding 1, Record at 16; that he engaged in substantial gainful activity ("SGA") during the period from January 2010 through December 2010, Finding 2, *id.*; that, accordingly, the remaining findings addressed the periods during which he did not engage in SGA, Finding 3, *id.* at 17; that, through his DLI, he had

the severe impairments, in combination, of obesity, diabetes mellitus, obstructive sleep apnea, hypertension, asthma, neuropathy, atrial fibrillation, degenerative disc disease of the lumbar spine, cervicalgia, and arthralgias of the hips and knees, Finding 4, *id*. at 17; that, through his DLI, he had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could not stand or walk for longer than 15 minutes at a time, could never walk or stand on uneven or sloping surfaces, could not kneel, crawl, or climb stairs/ladders/ropes/scaffolds, could occasionally climb ramps, stoop, balance, and crouch, could not work in temperature extremes, and could not do work requiring overhead reaching, Finding 6, *id*. at 21; that, through his DLI, considering his age (48 years old, defined as a younger individual, on his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 8-11, *id*. at 25; and that he, therefore, had not been disabled from August 1, 2007, his alleged onset date of disability, through December 31, 2012, his DLI, Finding 12, *id*. at 26. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past

relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 1 of the sequential evaluation process. At Step 1, the claimant bears the burden of rebutting the presumption that he engaged in SGA based on his earnings. *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Gallant v. Astrue*, Civil No. 09-357-P-S, 2010 WL 2927263, at *1 (D. Me. July 20, 2010) (rec. dec., *aff'd* Aug. 10, 2010). At Step 1, "if the applicant is engaged in [SGA], the application is denied[.]" *Purdy v. Berryhill*, 887 F.3d 7, 10 (1st Cir. 2018) (citation and internal quotation marks omitted); *see also, e.g.*, 20 C.F.R. § 404.1571.

Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "[W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." *Id.* "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

While a claimant's earnings are "[t]he primary consideration in determining whether particular work constituted [SGA][,]" *Knudsen v. Colvin*, No. 2:14-cv-155-JHR, 2015 WL 1505689, at *9 (D. Me. Apr. 1, 2015), "earnings from an unsuccessful work attempt [UWA] will not show that [a claimant is] able to do [SGA][,]" 20 C.F.R. 404.1574(a)(1). However, work lasting six months or less constitutes a UWA only if, (i) prior to the UWA, there is "a significant break in the continuity of [the claimant's] work[,]" meaning that the claimant was out of work for at least 30 consecutive days or was forced because of his or her impairment to change to another

type of work or another employer, and (ii) the claimant "stopped working or . . . reduced [his or her] work and earnings below the [SGA] earnings level because of [his or her] impairment or because of the removal of special conditions" that took the impairment into account and "permitted [the claimant] to work." *Id.* § 404.1574(c)(2).

## I. Discussion

### A. Plaintiff's Points

#### 1. Incomplete List of Diagnoses

The plaintiff first complains that the ALJ erroneously referred to only nine diagnoses as the basis for his claim of disability. *See* Statement of Errors at [1]. He supplies a "complete list" of more than 50 allegedly disabling diagnoses. *See id*. at [2]-[5]. For several reasons, he falls short of demonstrating that remand is warranted on this basis.

First, the ALJ considered more than nine diagnoses. She found that the plaintiff had 10 severe physical impairments, five nonsevere medically determinable physical impairments, and three nonsevere medically determinable mental impairments. *See* Record at 17-18. Second, the plaintiff includes several diagnoses made in 2016, which postdated his DLI by several years and, hence, have no apparent bearing on his condition as of the relevant time. *See* Statement of Errors at [4]-[5]. Third, and most importantly, a diagnosis, standing alone, does not establish the severity of an impairment or its resulting limitations. *See, e.g., Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). The plaintiff does not explain what limitations, if any, were omitted as a result of the ALJ's failure to consider additional diagnoses. *See* Statement of Errors at [2]-[5]; *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Remand, accordingly, is unwarranted on the basis of this point of error.

## 2. Asserted Badgering

The plaintiff next asserts that the ALJ unethically badgered him based on his poor memory, which he contends is one of his disabling diagnoses, and his disability generally, when she pressed him as to why he could not remember details of past work and what he did to fill his time once he stopped working. *See* Statement of Errors at [5]-[6] (citing Record at 43, 49-50).

As the commissioner rejoins, *see* Opposition at 3-5, the ALJ reasonably inquired about these relevant subject matters, *see, e.g.*, 20 C.F.R. § 404.1512(a), (a)(iv)-(v) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. . . . If we ask you, you must inform us about . . . [y]our work experience . . . [and] [y]our daily activities both before and after the date you say that you became disabled[.]") (citation omitted); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 96-8p"), at 146 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [r]eports of daily activities[.]").

The ALJ also reasonably inquired why the plaintiff could not remember details about his work and earnings in 2010 and 2007, seven and 10 years before the hearing, respectively. *See* Record at 43 ("[T]hat's not so long ago that you shouldn't remember it."), 50 ("Why don't you have a memory?"). Indeed, as the commissioner notes, *see* Opposition at 3-4, this provided the plaintiff, who had chosen to proceed without a representative at hearing, *see* Record at 36, an opportunity to explain his difficulty remembering important facts and events. In her decision, the ALJ considered the plaintiff's memory difficulties but found that the record contained no mention of such difficulties prior to his DLI and that he had only a mild limitation in understanding, remembering, or applying information. *See id.* at 18.

Remand, accordingly, is unwarranted on the basis of this point of error.

### 3.  Asserted Difficulty Hearing, Understanding Plaintiff

The plaintiff next argues that the hearing transcript contains "an extensive use of" dashes and indicates that he was inaudible several times during his testimony, raising concern that the ALJ did not hear and/or understand some of it.  *See* Statement of Errors at [6].  He adds that the ALJ may have chosen not to credit his testimony because of a language barrier.  *See id.*

The incompleteness of a transcript warrants remand only when a claimant demonstrates that the omission is prejudicial or impedes the process of judicial review.  *See, e.g., Barnes v. Barnhart*, 251 F. Supp.2d 973, 974 (D. Me. 2003).  The plaintiff does not attempt to make this showing, *see* Statement of Errors at [6], nor is it apparent that the omissions rise to that level.  As the commissioner points out, *see* Opposition at 5, the transcriptionist appears to have used dashes to reflect the interruption of one speaker by another or a speaker's own pause, *see, e.g.*, Record at 34-36.  The transcriptionist did indicate in seven places that the plaintiff's testimony was inaudible; however, in each instance, it appears that only a word was missed.  *See id.* at 36, 44, 47-49, 54. Remand, accordingly, is unwarranted on the basis of the asserted inaudible testimony.

The plaintiff's assertion that the ALJ may have discredited his testimony based on a language barrier is speculative.  He identifies nothing in the transcript of the hearing or the ALJ's decision suggesting that this was the case, *see* Statement of Errors at [6], and my own review of the hearing transcript indicates that the plaintiff understood the ALJ's questions, and the ALJ understood his answers.  Moreover, as the commissioner points out, *see* Opposition at 5-6, the plaintiff reported prior to his hearing that he could speak and understand English, and he was informed that if he could not do so, the agency would "provide an interpreter, free of charge[,]" Record at 179.  In one medical record submitted after the ALJ's decision, the plaintiff's preferred language was noted to be English.  *See id.* at 9.

Remand, accordingly, is unwarranted on this basis, as well.

#### 4. Reliance on VE Testimony

In deeming the plaintiff capable of performing work existing in significant numbers in the national economy, the ALJ relied on testimony of the VE at hearing that a person the same age as the plaintiff, with the same education, work experience, and RFC, could perform the representative jobs of dowel inspector, final assembler, and food and beverage order clerk. *See id*. at 26.

The plaintiff contends that the ALJ erred in relying on that testimony because it was predicated on "the erroneous list of diagnoses and as a result an erroneous list of limitations." Statement of Errors at [6]. He asserts that, while the ALJ stated that he could occasionally stoop and crouch, he cannot do so. *See id*. He adds that the ALJ failed to rely on VE testimony incorporating the limitation that the worker would be unable to complete a workday up to one-third of the time, which the VE testified would preclude all work. *See id*. at 7; Record at 54.

As the commissioner rejoins, *see* Opposition at 8, the plaintiff cites no medical evidence or testimony supporting his assertion that he could not occasionally stoop and crouch, *see* Statement of Errors at [6]. In the alternative, even if the ALJ should have adopted a limitation against any stooping or crouching, the error is harmless because none of the three jobs on which the ALJ relied requires stooping or crouching. *See Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT") §§ 713.687-018 (crouching and stooping "Not Present – Activity or condition does not exist" in final assembler position), 669.687-014 (same for dowel inspector position), 209.567-014 (same for food and beverage order clerk position).[3]

---

[3] At oral argument, the plaintiff further contended that the ALJ had omitted a limitation assessed by a treating physician against lifting more than 10 pounds. As counsel for the commissioner rejoined, the ALJ limited the plaintiff to a sedentary exertional level, *see* Finding 6, Record at 21, which by definition involves "lifting no more than 10 pounds at a time[,]" 20 C.F.R. § 404.1567(a).

As the commissioner further argues, *see* Opposition at 10, the plaintiff has not shown that the ALJ erred in declining to rely on testimony of the VE predicated on an inability to complete a workday up to one-third of the time. The ALJ explained to the plaintiff at hearing that this limitation was based on his own testimony that he could not stand for a whole day and, thus, could not work. *See* Record at 54. However, ultimately, she deemed the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 22. With respect to the plaintiff's ability to stand, she further explained that, while the record contained no evidence demonstrating his alleged severity of foot discomfort, and examiners had noted that he ambulated without difficulty, she nonetheless adopted restrictions against standing or walking for longer than 15 minutes at a time or ever walking or standing on uneven or sloping surfaces to account for his "alleged difficulty with his feet[.]" *Id.* at 23. The plaintiff does not challenge these findings. *See generally* Statement of Errors.

Remand, thus, is unwarranted on the basis of the ALJ's reliance on select testimony of the VE.

**5. Asserted Failure To Consider Combined Effect of Impairments, Wife's Testimony**

The plaintiff next contends that the ALJ erred in considering his diagnoses individually and not collectively and in completely disregarding his wife's written testimony. *See* Statement of Errors at [7]. Neither point has merit. The ALJ found that the plaintiff had 10 severe impairments "in combination[,]" that his "medically determinable impairments of gastritis, hyperlipidemia, varicose veins, insomnia, and gastroesophageal reflex disease (GERD), whether considered singly or combined with any other medically determinable impairment(s), d[id] not cause more than minimal functional limitations[,]" and that his "medically determinable mental

impairments of attention deficit disorder (ADD), anxiety disorder, and depression, considered singly and in combination, did not cause more than minimal limitation in [his] ability to perform basic mental work activities and were therefore nonsevere." Record at 17.

The ALJ also duly considered the plaintiff's wife's statement, explaining why she gave it little weight. *See id*. at 24. She was not obliged to accept it in whole or in part. *See, e.g., Guest v. Berryhill*, No. 2:16-cv-00228-JHR, 2017 WL 2414468, at *6 (D. Me. June 2, 2017) (noting that Social Security Ruling 06-03p ("SSR 06-03p") does not require that an [ALJ] give any particular weight to the opinions or testimony of "'other sources[,]'" including "'spouses, parents, friends, and neighbors'") (quoting SSR 06-03p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2016), at 333).

Remand, accordingly, is unwarranted based on these points of error.

### 6. Reliance on Medical Records To Deny Claim

The plaintiff next argues that the ALJ erroneously denied his claim for SSD benefits based not on the totality of the evidence but "solely/heavily on medical records[,]" given that "the reason for denial is insufficient medical records." Statement of Errors at [7]. This point, again, is without merit. The plaintiff complains that the ALJ ignored his testimony, the VE's testimony, and witness testimony. *See id*. However, the ALJ both discussed this evidence and stated that she factored it into her determination at Step 4 of the plaintiff's RFC and at Step 5 of his ability to perform work existing in significant numbers in the national economy. *See* Record at 21-26.

Remand, accordingly, is unwarranted on the basis of this point of error.

### 7. Asserted Errors in Recounting Plaintiff's Work History

The plaintiff finally complains that the ALJ erred in several respects in setting forth his work history. *See* Statement of Errors at [7]-[9].

As the commissioner argues, *see* Opposition at 10, to the extent that the plaintiff challenges the ALJ's finding at Step 1 regarding his work in 2010, *see* Statement of Errors at [9], he does not rebut the presumption that he engaged in SGA based on his self-employment earnings of $35,462 that year, which exceeded the 2010 SGA threshold of $1,000 monthly, *see* Finding 2, Record at 16; 20 C.F.R. §§ 404.1574(b)(2), 405.1575(c)(2); Social Security Program Operations Manual System ("POMS") § DI 10501.015(B).

The plaintiff argues that his work that year was unsuccessful because, while he tried to work by helping his wife with "therapeutic children[,]" it was "too much for [his] wife to care for the therapeutic children, the Plaintiff, and a home business all at the same time." Statement of Errors at [9]. However, the ALJ found that the plaintiff worked for the period from January 2010 through December 2010, *see* Finding 2, Record at 16, and the plaintiff does not challenge that finding, *see* Statement of Errors at [9]. If a claimant works at a job for more than six months during a year, his work is not an "unsuccessful work attempt" "regardless of why it ended or was reduced below the substantial gainful activity earnings level." 20 C.F.R. § 404.1575(d)(4).

Any error in the remainder of the plaintiff's work history is immaterial because it would not have changed the ALJ's analysis. At Step 4, the ALJ found that the plaintiff was not capable of returning to any past relevant work, *see* Finding 7, Record at 25, and at Step 5, she did not consider whether he had transferable job skills in deeming him capable of performing other work, *see* Finding 10, *id.*

Remand, accordingly is unwarranted on the basis of this point of error.

## B. Supportability of RFC Determination

I finally consider whether, as the commissioner argues, *see* Opposition at 6-9, the ALJ's RFC determination is supported by substantial evidence despite her rejection of the sole expert opinion of record bearing on his physical impairments, that of Dr. Rees, and her assignment of

only some weight to the sole opinions of record bearing on his mental impairments, those of Drs. Haskell and Burkhart, *see* Record at 18, 24. For the reasons discussed below, I find that it is.

### 1. Physical RFC

Dr. Rees deemed the plaintiff's physical impairments nonsevere as of his DLI, noting, for example, that, with respect to his asthma, there were normal or mild findings on testing, no frequent visits to the emergency department, and no chronic exacerbations, and with respect to his back pain, examinations revealed a nontender back with full range of motion, no musculoskeletal deficits, normal neurological examinations, no ambulatory deficits, and no objective evidence of more than a minimal impact on his ability to perform work-related activity. *See id.* at 71-72.

The ALJ gave the Rees opinion "little weight because additional evidence received after Dr. Rees issued her determination supports a finding that the [plaintiff] does have severe physical impairments." *Id.* at 24. She assessed several physical limitations in determining his RFC. *See* Finding 6, *id.* at 21.

"Although an [ALJ] is not precluded from 'rendering common-sense judgments about functional capacity based on medical findings,' he [or she] 'is not qualified to assess residual functional capacity based on a bare medical record.'" *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *2 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017) (quoting *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)).

In *Lisa Staples*, this court concluded that an ALJ had impermissibly assessed the raw medical evidence to derive a claimant's mental RFC after she rejected all three relevant expert opinions of record, one from a treating source assessing marked limitations and two from agency nonexamining consultants deeming the claimant's mental impairments nonsevere. *See id.* at *3-4. She declined to adopt the consultants' opinions on the basis that evidence received at the hearing

level demonstrated that the claimant's mental impairments were severe and resulted in moderate limitations in concentration, persistence, or pace. *See id.* at *5. She went on to craft several mental limitations, *see id.* at *1, which the court concluded were not the product of a commonsense judgment, *see id.* at *4.

On the other hand, this court has held that "'[i]t is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis of the adoption of a claimant's own testimony.'" *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *8 (D. Me. Sept. 22, 2017) (rec. dec., *aff'd* Mar. 28, 2018) (quoting *Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127, at *4 (D. Me. June 29, 2015)).

That is precisely what happened here.

The ALJ first noted that, although the plaintiff had alleged that his neck, back, hip, and knee pain was "so severe that he spends days or weeks bedridden and that he has difficulty walking, sitting, standing, and lifting," there was "no objective medical evidence in the record that supports this level of functional limitation prior to the [plaintiff]'s DLI." Record at 22. However, after summarizing that objective evidence, she explained:

> In consideration of the [plaintiff]'s alleged back, neck, hip, and knee pain and alleged functional limitations, the [RFC] found within this Decision provides for no kneeling, crawling, climbing of stairs/ladders/scaffolds/ropes and occasional climbing of ramps, stooping, balancing, and crouching. Furthermore, the RFC statement limits the [plaintiff] to no work requiring overhead reaching.

*Id.*

The ALJ next noted that the plaintiff "alleged severe pain, numbness, tingling, burning, and itching in his upper and lower extremities[,]" as well as "experiencing neuropathy in both his hands and feet." *Id.* at 23. She observed that the record was devoid of evidence "showing the severity of hand and foot discomfort" alleged by the plaintiff prior to his DLI. *Id.* For example, she explained, "records prior to his DLI contain little evidence regarding neuropathy[,]" the

13

plaintiff's "feet and hands were examined on multiple occasions throughout the record, and medical providers describe [them] as unremarkable, with no swelling, tenderness, bleeding, or cold limbs[,]" and "examiners have noted that the [plaintiff] ambulates without difficulty." *Id*. However, she explained:

> [T]he RFC statement accounts for the [plaintiff]'s alleged difficulty with his feet and sets forth a restriction of no standing or walking for longer than 15 minutes at a time and never walking or standing on uneven or sloping surfaces.

*Id*.

The ALJ finally explained that, although treatment notes revealed that the plaintiff's asthma was stable on medications and there was no evidence of record that it caused any functional limitations prior to his DLI, her RFC determination nevertheless "provide[d] for no working in extreme temperatures to ensure a safe working environment and to protect against asthma exacerbations." *Id*. at 24.

While the ALJ did not discuss her assessment of a sedentary work capacity, *see id*. at 22-24, it is the lightest of the five physical exertional categories recognized by the commissioner (sedentary, light, medium, heavy, and very heavy), *see* 20 C.F.R. § 404.1567, and, thus, the most consistent with the allowances that she explained she made to account for the plaintiff's subjective allegations.[4]

As counsel for the commissioner contended at oral argument, these circumstances align this case with *Black*, in which remand was deemed unwarranted when, "from all that appear[ed], the evidence unseen by agency nonexamining consultants on which the ALJ relied in finding great

---

[4] The commissioner defines sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" as well as sitting, with "walking and standing . . . required occasionally[.]" 20 C.F.R. § 404.1567(a). By contrast, the next-heavier category of light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 404.1567(b).

limitation was the [claimant]'s own hearing testimony," *Black*, 2017 WL 4220116, at *8, and materially distinguish it from *Lisa Staples*, in which the court reversed the ALJ's decision and remanded the case when the ALJ assessed mental limitations based on raw medical evidence that postdated and, in her view, undermined, the agency nonexamining consultants' opinions, *see Lisa Staples*, 2017 WL 1011426, at *4-5.

The ALJ's physical RFC determination, hence, is supported by substantial evidence.

## 2. Mental Impairments

Drs. Haskell and Burkhart both found that there was insufficient evidence to assess the plaintiff's mental impairments and mental functional capacity for the period from his alleged onset date of disability, August 1, 2007, through his DLI, December 31, 2012. *See* Record at 62, 71.

The ALJ gave these opinions some weight, explaining:

> Although[] subsequent records received after their determinations support[] that the [plaintiff] does have nonsevere mental impairments, their overall assessment supports that [he] has received modest mental health treatment, he has not required hospitalization due to these impairments, he does not attend ongoing counseling, and his mental impairments are well controlled with prescription medication.

*Id.* at 18.

She then discussed each of the four broad areas of mental functioning, finding that the plaintiff had only mild limitations in the areas of (i) understanding, remembering, or applying information, (ii) interacting with others, and (iii) concentrating, persisting, or maintaining pace and had no limitation in the area of adapting or managing oneself. *See id.* She correctly noted that findings of no more than mild limitations in those areas translate into a determination that a claimant's mental impairments are nonsevere. *See id.* at 19; 20 C.F.R. § 404.1520a(d)(1).

These conclusions are supported by substantial evidence in the form of the attribution of some weight to the Haskell and Burkhart opinions, the plaintiff's modest mental health treatment,

findings on examination that he was alert, oriented, and cooperative with an appropriate mood and affect and normal judgment), and his activities of daily living. *See* Record at 18.

Because the ALJ supportably deemed the plaintiff's mental impairments nonsevere and assessed no mental limitations, *see* Findings 4, 6, *id.* at 17, 21, she did not interpret raw medical evidence in determining his RFC.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 1st day of February, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge